**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NIVEEN SHIHADEH, | : |
| Plaintiff | : |
| v. | : Civil Action No. _____ |
| CITADEL FEDERAL CREDIT UNION, | : JURY TRIAL DEMANDED |
| Defendant | : |

**COMPLAINT**

Plaintiff, Niveen Shihadeh, by and through her undersigned counsel, Edward Bigham,

Esq. of Bigham Law, PLLC, brings this wrongful termination claim alleging as follows:

**INTRODUCTION**

1.     This action arises under Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. which, among other things, prohibits discrimination and retaliation based on disability.

2.     This action arises under the Pennsylvania Human Relations Act, 43 P.S. § 951, et. seq., ("PHRA") which, among other things, prohibits discrimination and retaliation based on disability or age.

3.     This action arises under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. which, among other things, prohibits employers from interfering, discriminating or retaliating against employees engaged in protected leave/activities.

4.     This action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*, which, among other things, prohibits discrimination and retaliation based on age.

## PARTIES

5.    Plaintiff, Niveen Shihadeh, is a 47-year-old individual residing at 21 Turnberry Court, Coatesville, Pennsylvania 19320.

6.    Defendant, Citadel Federal Credit Union, is a banking institution headquartered in Exton, Pennsylvania and maintains a branch location at 520 Eagleview Boulevard, Exton, Pennsylvania 19341, where the events giving rise to this action occurred.

7.    Defendant, Citadel Federal Credit Union is an employer within the meaning of and subject to the relevant requirements of the ADA, FMLA, ADEA and PHRA, generally and as otherwise referenced herein.

8.    At all times relevant hereto, Plaintiff's supervisor and Branch Manager, Ruth-Anne Clark ("Clark"), Human Relations Director, Heather Morgan ("Morgan"), Assistant Branch Manager, Nicole Worrell ("Worrell") and other individuals working at the Citadel branch or its corporate offices in Exton were employees, actual or apparent agents or otherwise controlled by and acting within the scope of their employment with Defendant.

9.    At all times relevant hereto, Defendant was vicariously liable for the acts and omissions of its employees at the Citadel branch and corporate headquarters in Exton.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal statutes, including the ADA, FMLA and ADEA.

11.    This Court has subject matter jurisdiction over state PHRA claims pursuant to 28 U.S.C. 1367 because the state claims arise under the same case and controversy as Plaintiff's federal claims under the ADA, FMLA and ADEA.

12.    Personal jurisdiction is proper because Defendant conducts business in this district and

maintains a branch location at 520 Eagleview Boulevard, Exton, PA 19341, where

Plaintiff was employed and where the unlawful conduct occurred.

13.    Venue is proper under 28 U.S.C. § 1391(b) because Defendant company regularly

conducts business in this district and maintains a branch location at 520 Eagleview

Boulevard, Exton, PA 19341, where Plaintiff was employed and where the unlawful

conduct occurred.

## ADMINISTRATIVE PROCESS

14.    Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment

Opportunity Commission (EEOC) on September 2, 2025, under Charge No. 530-2025-

09514, and contemporaneously with the Pennsylvania Human Relations Commission

(PHRC).

15.    Plaintiff received a Notice of Right to Sue issued by the EEOC dated December 18, 2025.

16.    Plaintiff has exhausted all administrative remedies for actions under the ADA, FMLA,

ADEA and PHRA

## FACTUAL ALLEGATIONS

17.    Plaintiff began working for Defendant as a teller on January 10, 2022, when she was 43

years old.

18.    Plaintiff was promoted to Senior Service Representative on January 1, 2023, recognizing

her strong performance and skill set.

19.    At all times relevant hereto, Plaintiff suffered from medical conditions and disability,

including diabetes.

20.    Plaintiff notified Defendant of her diabetes at the beginning of her employment.

21.　At all times relevant hereto, Defendant was aware of Plaintiff's medical conditions and disability, including her diabetes, during the term of her employment.

22.　At all times relevant hereto, Defendant was aware of Plaintiff's medical conditions and disability, including her diabetes, at or around the time she applied for FMLA benefits.

23.　Defendant, by and through its employees and agents, Clark and Morgan, testified under oath and on the record before Pennsylvania Bureau of Unemployment Hearing Officer John Taulane on June 24, 2025 and July 17, 2025.

24.　In her sworn testimony on June 24, 2025, Plaintiff's supervisor, Clark, testified "I did know she had diabetes" and "I was aware [she had diabetes] otherwise I wouldn't have known why she filed for FMLA."

25.　In her sworn testimony on July 17, 2025, HR Director, Morgan, testified that she was "aware Claimant [Plaintiff] had various medical conditions necessitating accommodation in July of 2024" and was "aware that she [Plaintiff] had diabetes in November of 2024."

26.　At all times relevant hereto, Plaintiff was unable to drive an automobile due to her medical conditions and disability, including her diabetes, and relies on Rover, a transportation service for individuals with disabilities.

27.　At all times relevant hereto, Defendant was aware that Plaintiff is unable to drive and utilized a service to get to work.

28.　From the inception of her employment until the spring/summer of 2024, Plaintiff rarely missed any time from work.

29.　From the inception of her employment until the spring/summer of 2024, Plaintiff was consistently early to work.

30.    In the first 18 months of Plaintiff's employment, she received numerous and regular bonuses and accolades for her excellent performance, including a promotion and the President's Council Award for 2023.

31.    Plaintiff was eligible for bonuses and President's Council Award for 2024, but Defendant terminated her without paying her bonus or granting her earned President's Council Award.

32.    In the spring/summer of 2024 Plaintiff experienced an exacerbation of her diabetes causing unpredictable episodes of glucose instability requiring insulin treatment.

33.    Plaintiff's difficulty regulating her glucose occasionally resulted in her arriving late to work and taking time off for medical appointments.

34.    At all times relevant hereto, when Plaintiff was unable to leave her home on time due to her inability to regulate her glucose levels, she would miss her ride with Rover and require alternate transportation, sometimes resulting in tardiness to work.

35.    Periodically Rover was late picking Plaintiff up for work, resulting in her tardiness to work.

36.    At all times relevant hereto, Plaintiff notified her manager, Clark, when she would be late due to her inability to regulate her glucose levels or disability related transportation challenges.

37.    At the suggestion of Defendant, Plaintiff applied for FMLA leave in late June, 2024 and was granted intermittent FMLA leave on or about July 15, 2025 for her medically certified diabetic condition.

38.    Plaintiff was also granted continuous FMLA leave for various periods of time.

39.  Plaintiff's approved FMLA leave granted her intermittent leave through July 1, 2025 for her medically certified diabetic condition.

40.  Despite Plaintiff's ongoing challenges with her disability, she continued to exceed all performance expectations and goals set by Defendant.

41.  Despite Plaintiff's continued success in her job, after she began experiencing complications from her disability and applied for FMLA Defendant stopped recognizing and celebrating her achievements.

42.  In December of 2024 Defendant unilaterally, without consultation, discussion or interaction with Plaintiff, changed Plaintiff's start time from 8:00 AM to 8:30 AM.

43.  Despite this change in start time, Plaintiff continued to experience periodic lateness due to the unpredictable nature of her diabetic complications.

44.  From August 2024, immediately after Plaintiff applied for and was granted FMLA leave, through the end of her employment, Defendant meticulously documented and reprimanded Plaintiff for her disability related tardiness.

45.  From the time Plaintiff began experiencing challenges due to her disability, Defendant began treating her differently.

46.  Plaintiff's supervisor, Clark, began noticeably ignoring Plaintiff, refusing to engage in conversation with her and on several occasions rolled her eyes at Plaintiff when Plaintiff attempted to talk to her as she had in the past.

47.  On one occasion after Plaintiff applied for and was granted FMLA leave, Plaintiff's supervisor, Clark, told Plaintiff: "I wish you would go back to the way you were."

48.  Plaintiff responded to Clark's comment asking what she meant as Plaintiff was fulfilling and succeeding in all aspects of her job despite not feeling well.

49.    Clark enforced Defendant's policies and procedures, including its Attendance and
Tardiness Policy, more strictly with Plaintiff than other employees without a disability
after Plaintiff began experiencing an exacerbation of her disability symptoms.

50.    On numerous occasions from the time Plaintiff was granted FMLA to the date of her
termination, Defendant, through its employees and agents, including Clark and Morgan,
wrongfully informed Plaintiff that her FMLA was for "appointments and treatments"
only and not for disability related tardiness unless it related to a doctor's appointment or
treatment.

51.    At the Pennsylvania Unemployment Compensation Hearing on July 17, 2025, Defendant,
by and through its HR Director, Morgan, testified under oath on the record that Plaintiff
could use FMLA for "treatment and appointments" but "not for lateness."

52.    On numerous occasions, Defendant, through its employees and agents, including Clark,
Worrell and Morgan, instructed Plaintiff not to provide Defendant with information
regarding her disability, including when her disability resulted in tardiness.

53.    At the Pennsylvania Unemployment Compensation Hearing on June 24, 2025,
Defendant, by and through Plaintiff's supervisor, Clark, testified that "she may have told
her [Plaintiff] that she didn't need them [proof of why she was late]."

54.    Plaintiff, trusting the perceived expertise of her employer, not having had experience with
medical leave and fearful of losing her job, relied on Defendant's misrepresentations that
her FMLA did not cover her tardiness regardless of its relation to her disability.

55.    Defendant repeatedly threatened, disciplined with verbal and written warnings, issued
performance improvement plans, and harassed Plaintiff for tardiness and complications
directly related to her disability.

56. At all times relevant hereto, Plaintiff was intimidated, confused, frustrated, fearful and stifled by Defendant's admonishments, threats, and impossible directives.

57. Despite Plaintiff's best efforts and intention to comply with Defendant's demands and threats that she comply with its Attendance and Tardiness policy to preserve her job, her diabetic condition was unpredictable and out of her control.

58. Complying with Defendant's wrongful information and instruction, and in fear of further retaliation from Defendant relating to her struggles with her disability, Plaintiff did not report her tardiness to FMLA during the term of her employment.

59. At all times relevant hereto, Plaintiff diligently sought medical treatment to control her medical conditions and diabetic flare-ups and complied with physician recommendations to the best of her ability.

60. At all times relevant hereto, Plaintiff experienced significant anxiety and stress caused by Defendant's conduct towards her relating to her disability, further exacerbating her symptoms and causing more frequent and severe flare-ups and need for medical treatment.

61. As a direct and proximate result of Defendant's treatment of Plaintiff relating to her disability, Plaintiff began treating with a psychiatrist and psychologist in an attempt to manage the anxiety and stress associated with Defendant's conduct towards her.

62. At no time did Defendant engage in an interactive process with Plaintiff to determine what, if any, reasonable accommodation could be made to allow Plaintiff to continue succeeding in her job.

63. On January 3, 2025, Defendant issued a Performance Improvement Plan, citing Plaintiff's failure to adhere to its Attendance and Punctuality Policy.

64. On or about February 25, 2025, Plaintiff provided Defendant with a note from her physician indicating that she requires surgery that will result in a six (6) week recovery period and leave from her job.

65. On March 6, 2025, Defendant terminated Plaintiff's employment, citing her violation of its Attendance and Punctuality Policy as the sole reason for termination.

66. After termination, Plaintiff contacted Defendant's FMLA vendor, FMLA Source, to notify them of her termination due to violation of Plaintiff's Attendance and Punctuality Policy.

67. FMLA Source confirmed to Plaintiff that her tardiness due to her diabetes (her certified condition) would be covered under FMLA and suggested she submit the dates and times.

68. Plaintiff submitted the dates and times of tardiness relating to her covered medical condition, diabetes.

69. FMLA Source approved these submissions as covered under her intermittent FMLA.

70. On or about March 6, 2025, Plaintiff applied for Unemployment Compensation Benefits.

71. Defendant opposed Plaintiff's claim for Unemployment Benefits based on its allegation of willful violation of its Attendance and Punctuality Policy.

72. In the month leading up to Plaintiff's termination, Defendant, without notifying staff, promoted Alizia, an individual in her twenties to Plaintiff's role and title despite not having any open positions available for that role.

73. After Plaintiff's termination, Alizia took over Plaintiff's role confirming Defendant's premeditated intention to terminate Plaintiff and put Alizia into her role.

74. Defendant maintains a pattern of hiring and retaining younger employees.

75.    When Plaintiff began asserting her rights to Pennsylvania Unemployment Compensation, ADA, FMLA, PHRA and ADEA, Defendant threatened branch employees with disciplinary action and termination should they have any continued contact with Plaintiff even though several employees had personal friendships with the Plaintiff.

76.    After Plaintiff's termination, Defendant advised employees that their personal phones would be reviewed should there be suspicion that they were speaking with Plaintiff, inciting fear of retaliation with the employees and impacting Plaintiff's personal relationships.

## COUNT I

### Disability Discrimination, Failure to Accommodate, and Retaliation - ADA - 42 U.S.C. § 12101 *et seq.*

77.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

78.    Plaintiff is an individual with a disability within the meaning of the ADA in that Plaintiff has, diabetes, and other physical and mental impairments that substantially limits one or more major life activities, and/or was regarded as having such an impairment, and/or had a record of such an impairment.

79.    At all relevant times, Plaintiff was qualified to perform the essential functions of her position with Defendant, with or without reasonable accommodation, and consistently performed her duties in an exemplary manner.

80.    Defendant is an "employer" within the meaning of the ADA and, at all relevant times, employed the requisite number of employees.

81.    Plaintiff disclosed her medical conditions and disability, including her diabetes, to Defendant.

82.    Defendant knew or had reason to know of Plaintiff's medical conditions and disability, including her diabetes, because Plaintiff was open about her condition generally to branch employees, kept special food and insulin in the staff refrigerator and Defendant, by and through its employees and agents, admitted to such knowledge in their sworn testimony before the Pennsylvania Unemployment Compensation Referee as described herein,

83.    Defendant knew or had reason to know of Plaintiff's need for reasonable accommodation, including with respect to punctuality and occasional time away from work to obtain treatment related to her disability.

84.    Plaintiff requested reasonable accommodation related to her medical conditions and disability through filing for FMLA and through clearly demonstrating that she had a disability requiring such reasonable accommodation.

85.    Despite knowledge of Plaintiff's medical conditions and disability, including her diabetes, and her need for reasonable accommodation, Defendant:

    a.    failed to recognize Plaintiff's request for FMLA as a request for reasonable accommodation under the ADA;

    b.    failed to recognize Plaintiff's need for reasonable accommodation under the ADA based on its knowledge of her medical conditions and disability, including her diabetes;

    c.    failed to engage in a good-faith, interactive process with Plaintiff to identify and implement reasonable accommodation;

    d.    failed to ask Plaintiff if her tardiness was related to her disability;

    e.    failed to ask Plaintiff for medical evidence linking her tardiness to her disability;

f.     failed to ask Plaintiff for input, including medical input from her treating providers, relating to the nature, extent, duration, and limitations relating to her disability;

g.     encouraged Plaintiff not to provide them with information relating to her disability, obstructing her ability to pursue her need for reasonable accommodation;

h.     failed to follow it's own Disability policy; and

i.     failed to offer available reasonable accommodation to allow Plaintiff to be successful in her job, including flexibility in her schedule, opportunity to work remotely, or leave of absence, which accommodation would not place an undue burden on Defendant.

86.     Instead of complying with the requirements of the ADA relating to Plaintiff's known medical conditions and disability, including diabetes, Plaintiff's supervisor, Clark, and/or other management personnel employed by Defendant engaged in a pattern of harassment, discriminatory and retaliatory treatment toward Plaintiff because of her disability and related needs, including but not limited to:

a.     harassing and threatening Plaintiff for tardiness that was directly related to her disability;

b.     treating Plaintiff differently by and through its employees, Clark and Worrell, including avoiding conversation, ignoring and eye rolling directed toward Plaintiff;

c.     making condescending and disparaging comments reflecting discriminatory animus and hostility to Plaintiff about her struggles to manage her medical

conditions and disability, including her diabetes such as "I wish you would go back to the way you were";

d.    misleading Plaintiff to believe her job wasn't protected from episodes of tardiness even if such episodes related to her qualified disability;

e.    advising Plaintiff not to provide information relating to her disability so Defendant can claim they were unaware of her disability and absolve itself of compliance with the ADA;

f.    repeatedly threatening disciplinary action and termination when Plaintiff needed to take time to treat her disability;

g.    reprimanding and disciplining Plaintiff for violation of its policies, including its Attendance and Tardiness Policy, more strictly than it did other employees without a disability;

h.    demanding Plaintiff comply with its Attendance and Tardiness Policy despite its knowledge that her disability symptoms were unpredictable and outside of her control;

i.    issuing warnings and a performance improvement plans only citing instances of tardiness relating to her disability as the sole reason for discipline;

j.    acting unilaterally regarding Plaintiff's employment status and schedule rather than discussing, interacting, and implementing reasonable accommodations; and

k.    terminating Plaintiff's employment for violation of its Attendance and Tardiness Policy when alleged violations related to her disability and in spite of Plaintiff's continued stellar performance.

87.    Defendant's stated reasons for terminating Plaintiff, including alleged policy violations related to tardiness, were false and pretextual, and the real reason for Plaintiff's termination was her disability, her disability related limitations, and the perceived inconvenience of accommodating those limitations.

88.    The pretextual and discriminatory nature of Defendant's conduct is evidenced by, among other things:

   a.    the timing of discipline and termination closely following Plaintiff's requests for and use of disability related accommodations;

   b.    plaintiff's consistently strong performance history, even while she was struggling with tardiness due to her disability;

   c.    plaintiff's supervisor, Clark's, statement "I just want you to go back to the way you were;"

   d.    plaintiff's supervisor, Clark's, stark change in how she interacted with Plaintiff, including avoiding conversation (personal or business), ignoring Plaintiff when she attempted conversation and rolling her eyes when Plaintiff tried to speak to her;

   e.    Defendant's direction that Plaintiff refrain from providing information relating to her disability;

   f.    Defendant's failure to provide disability related support before resorting to termination; and

   g.    Defendant's pattern of threatening discipline whenever Plaintiff needed time or flexibility to treat her disability.

89.    Defendant's conduct and adverse employment actions, including termination of Plaintiff's employment, constitute unlawful discrimination and retaliation because of Plaintiff's disability and/or request for accommodation, in violation of the ADA.

90.    But for Defendant's unlawful conduct as described herein, Plaintiff's job would have been protected.

91.    As a direct and proximate result of Defendant's unlawful conduct as described herein, Plaintiff suffered and will continue to suffer lost wages, benefits, bonuses, future earning capacity, anxiety, emotional distress, humiliation, embarrassment, loss of enjoyment of life, and other pecuniary and non-pecuniary damages.

92.    Defendant's actions were willful, intentional, malicious, and/or taken with reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to compensatory damages, punitive damages to the extent available, and all other remedies permitted under the ADA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on this Count, and award all available relief, including but not limited to: back pay, front pay, lost benefits, compensatory damages, punitive damages (where permitted), attorneys' fees and costs, pre and post judgment interest, and such other legal and equitable relief as the Court deems just and proper.

## COUNT II

### Disability Discrimination, Failure to Accommodate, and Retaliation
### PHRA - 43 P.S. § 951 *et seq.*

93.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

94.  Plaintiff is an individual with a disability within the meaning of the PHRA in that Plaintiff has diabetes, and other physical and mental impairments that substantially limits one or more major life activities, and/or was regarded as having such an impairment, and/or had a record of such an impairment.

95.  At all relevant times, Plaintiff was qualified to perform the essential functions of her position with Defendant, with or without reasonable accommodation, and consistently performed her duties in an exemplary manner.

96.  Defendant is an "employer" within the meaning of the PHRA and, at all relevant times, employed the requisite number of employees.

97.  Plaintiff disclosed her medical conditions and disability, including her diabetes, to Defendant.

98.  Defendant knew or had reason to know of Plaintiff's medical conditions and disability, including her diabetes, because Plaintiff was open about her condition generally to branch employees and Defendant, by and through its employees and agents, admitted to such knowledge in their sworn testimony before the Pennsylvania Unemployment Compensation Referee as described herein,

99.  Defendant knew or had reason to know of Plaintiff's need for reasonable accommodation, including with respect to punctuality and occasional time away from work to obtain treatment related to her diabetes with insulin.

100. Plaintiff requested reasonable accommodation related to her medical conditions and disability through filing for FMLA and through clearly demonstrating that she had a disability requiring such reasonable accommodation.

101.   Despite knowledge of Plaintiff's medical conditions and disability, including her
diabetes, and her need for reasonable accommodation, Defendant:

a.   failed to recognize Plaintiff's request for FMLA as a request for reasonable
accommodation under the PHRA;

b.   failed to recognize Plaintiff's need for reasonable accommodation under the
PHRA based on its knowledge of her medical conditions and disability, including
her diabetes;

c.   failed to engage in a good-faith, interactive process with Plaintiff to identify and
implement reasonable accommodation;

d.   failed to ask Plaintiff if her tardiness was related to her disability;

e.   failed to ask Plaintiff for medical evidence linking her tardiness to her disability;

f.   failed to ask Plaintiff for input, including medical input from her treating
providers, relating to the nature, extent, duration, and limitations relating to her
disability;

g.   encouraged Plaintiff not to provide them with information relating to her
disability, obstructing her ability to pursue her need for reasonable
accommodation; and

h.   failed to offer available reasonable accommodation to allow Plaintiff to be
successful in her job, including flexibility in her schedule, opportunity to work
remotely, or leave of absence, which accommodation would not place an undue
burden on Defendant.

102.   Instead of complying with the requirements of the PHRA relating to Plaintiff's known
medical conditions and disability, including diabetes, Plaintiff's supervisor, Clark, and/or

other management personnel employed by Defendant engaged in a pattern of harassment, discriminatory and retaliatory treatment toward Plaintiff because of her disability and related needs, including but not limited to:

a.    harassing and threatening Plaintiff for tardiness that was directly related to her disability;

b.    making condescending and disparaging comments reflecting discriminatory animus and hostility to Plaintiff about her struggles to manage her medical conditions and disability, including her diabetes, such as "I wish you would go back to the way you were";

c.    misleading Plaintiff to believe her job wasn't protected from episodes of tardiness even if such episodes related to her qualified disability;

d.    advising Plaintiff not to provide information relating to her disability so Defendant can claim they were unaware of her disability and absolve itself of compliance with the PHRA;

e.    repeatedly threatening disciplinary action and termination when Plaintiff needed to take time to treat her disability;

f.    reprimanding and disciplining Plaintiff for violation of its policies, including its Attendance and Tardiness Policy, more strictly than it did other employees without a disability;

g.    demanding Plaintiff comply with its Attendance and Tardiness Policy despite its knowledge that her disability symptoms were unpredictable and outside of her control;

h.    issuing warnings and a performance improvement plan citing instances of
      tardiness relating to her disability;

i.    acting unilaterally regarding Plaintiff's employment status and schedule rather
      than discussing, interacting, and implementing reasonable accommodations; and

j.    terminating Plaintiff's employment for violation of its Attendance and Tardiness
      Policy when alleged violations related to her disability and in spite of Plaintiff's
      continued stellar performance.

103.  Defendant's stated reasons for terminating Plaintiff, including alleged policy violations
      related to tardiness, were false and pretextual, and the real reason for Plaintiff's
      termination was her disability, her disability related limitations, and the perceived
      inconvenience of accommodating those limitations.

104.  The pretextual and discriminatory nature of Defendant's conduct is evidenced by, among
      other things:

a.    the timing of discipline and termination closely following Plaintiff's requests for
      and use of disability related accommodations;

b.    plaintiff's consistently strong performance history, even while she was struggling
      with tardiness due to her disability;

c.    plaintiff's Supervisor's statement "I just want you to go back to the way you
      were";

d.    Defendant's direction that Plaintiff refrain from providing information relating to
      her disability;

e.    Defendant's failure to provide disability related support and accommodation
      before resorting to termination; and

      f.      Defendant's pattern of threatening discipline whenever Plaintiff needed time or flexibility to treat her disability.

105.    Defendant's conduct and adverse employment actions, including termination of Plaintiff's employment, constitute unlawful discrimination and retaliation because of Plaintiff's disability and/or request for accommodation, in violation of the ADA.

106.    But for Defendant's unlawful conduct as described herein, Plaintiff's job would have been protected.

107.    As a direct and proximate result of Defendant's unlawful conduct as described herein, Plaintiff suffered and will continue to suffer lost wages, benefits, bonuses, future earning capacity, anxiety, emotional distress, humiliation, embarrassment, loss of enjoyment of life, and other pecuniary and non-pecuniary damages.

108.    Defendant's actions were willful, intentional, malicious, and/or taken with reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to compensatory damages, punitive damages to the extent available, and all other remedies permitted under the ADA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on this Count, and award all available relief, including but not limited to: back pay, front pay, lost benefits, compensatory damages, punitive damages (where permitted), attorneys' fees and costs, pre and post judgment interest, and such other legal and equitable relief as the Court deems just and proper.

## COUNT IIII

### FMLA Interference - 29 U.S.C. §§ 2615(a)(1) and §2617

109.   Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

110.   At all times relevant, Defendant was an "employer" and Plaintiff was an "eligible employee" within the meaning of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2611(2), (4), in that Defendant was engaged in commerce or in an industry or activity affecting commerce and employed fifty (50) or more employees for each working day during at least twenty (20) calendar weeks in the current or preceding calendar year.

111.   At all times relevant hereto, Plaintiff worked for Defendant for at least twelve (12) months and at least 1,250 hours in the twelve (12) months preceding the events at issue.

112.   At all times relevant, Plaintiff was entitled to FMLA leave for a qualifying reason, including Plaintiff's serious health condition, diabetes.

113.   In late June, 2024, Plaintiff engaged in protected activity under the FMLA by applying for FMLA-qualifying leave.

114.   Plaintiff was approved for intermittent FMLA leave through July 15, 2025 as well as various periods of continuous FMLA leave relating to her qualified medical status.

115.   At all times relevant hereto, Defendant was aware of Plaintiff's FMLA request, the reason for the request and the terms of Plaintiff's FMLA approval.

116.   At all times relevant hereto, Plaintiff, either explicitly or implicitly, provided Defendant with reasonable notice of her lateness and need and intent to take FMLA protected leave.

117.    In the Unemployment Compensation Hearing on June 24, 2025, Defendant, by and
through Plaintiff's supervisor, Clark, testified that Plaintiff did, in fact, report when she
[Plaintiff] would be late to work.

118.    At all times relevant hereto, Defendant was aware that Plaintiff had engaged in protected
FMLA activity, including applying for FMLA and incurring episodes of tardiness, which
were covered under Plaintiff's approved intermittent FMLA leave.

119.    Defendant interfered with and stifled Plaintiff's ability to use her approved FMLA leave
as follows:

a.    wrongfully advising Plaintiff that her intermittent FMLA leave was to be used for
"treatment and appointments" and did not cover tardiness, even if it was related to
her serious and certified health condition, diabetes;

b.    misrepresenting the scope of Plaintiff's approved FMLA leave;

c.    insisting Plaintiff needed to refile her FMLA to cover "periods of incapacity"
related to her serious medical condition;

d.    misleading Plaintiff to believe her lateness due to her disability and need to treat
with insulin was not covered under her FMLA;

e.    instructing Plaintiff to stop providing explanation relating her disability/FMLA
related to her tardiness;

f.    refusing to recognize Plaintiff's tardiness as protected under FMLA; and

g.    issuing discipline based on protected tardiness, up to and including termination.

120.    Defendant's adverse employment actions, including termination, were a direct and
proximal result of Plaintiff exercising her right to utilize protected FMLA leave,

including filing for FMLA and demonstrating a need to use protected leave under her approved FMLA.

121.    Defendant's actions described above constitute interference with Plaintiff's rights to exercise her rights guaranteed by the FMLA, in violation of 29 U.S.C. § 2615(a)(2) and/or 29 U.S.C. § 2615(b).

122.    Plaintiff's job would have been preserved and protected but for Defendants interference with her rights under FMLA.

123.    As a direct and proximate result of Defendant's unlawful interference, Plaintiff has suffered and continues to suffer lost wages, benefits, bonuses, future earnings and earning capacity, and other monetary losses recoverable under 29 U.S.C. § 2617(a)(1)(A).

124.    Plaintiff is also entitled to an additional equal amount as liquidated damages because Defendant's violation of the FMLA was willful and/or not in good faith, together with interest, attorneys' fees, and costs as provided by 29 U.S.C. § 2617(a)(1)(A)–(3).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant and award all remedies available under the FMLA, including: back pay, front pay, lost benefits, earned bonuses, liquidated damages, interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## COUNT IV

### FMLA Retaliation and Discrimination
### 29 U.S.C. § 2615 (a)(2) and/or (b), §2617

125.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

126.    Plaintiff engaged in protected FMLA activity as alleged herein.

127.   Defendant subjected Plaintiff to retaliation, discrimination and adverse action that

materially affected the terms, conditions, and privileges of Plaintiff's employment

directly after Plaintiff engaged in protected activity, including but not limited to:

a.   repeated threats of disciplinary action;

b.   harassing and threatening Plaintiff relating to her need to utilize FMLA protected

leave;

c.   issuing disciplinary warnings for tardiness for instances that were FMLA

protected leave;

d.   issuing a performance improvement plan for tardiness that were FMLA protected

leave;

e.   intimidating Plaintiff into refraining from reporting instances of tardiness under

her approved intermittent FMLA leave;

f.   making disparaging comments about Plaintiff's disability and need to take FMLA

leave, including "I wish you would go back to the way you were;"

g.   avoiding conversation (personal or business), ignoring Plaintiff when she

attempted conversation and eye rolling when Plaintiff attempted to speak with

management, including Clark and Worrell;

h.   denying Plaintiff earned bonuses and accolades, including President's Council

Award for 2024;

i.   Purposefully misleading Plaintiff to believe tardiness due to her medically

certified medical condition was not covered under her intermittent FMLA;

j.   terminating Plaintiff for tardiness that should was FMLA protected leave.

k.   disparately enforcing policies, including its Attendance and Tardiness policy, against Plaintiff as compared to other employees who had not applied for FMLA;

l.   terminating Plaintiff within a few days of her request for additional leave to have surgery relating to her qualified medical condition; and

m.   failing to follow it's own FMLA policy.

128.   Defendant's adverse employment actions, including termination, were retaliatory and a direct and proximal result of Plaintiff exercising her right to utilize protected FMLA leave, including filing for FMLA and demonstrating a need to use protected leave under her approved FMLA as follows:

a.   Defendant's adverse employment actions, including warnings, threats, and formal disciplinary action began right after Plaintiff filed for FMLA and continued as Plaintiff demonstrated need to utilize her FMLA leave;

b.   Defendant's comment "I just want you to go back to the way you were" occurred after Plaintiff filed for FMLA and referred directly to her disability flare-up and need for FMLA.

c.   After Plaintiff began experiencing difficulty with her disability and applied for FMLA leave, Defendant began treating her differently, avoiding conversation, ignoring her, eye rolling directed at Plaintiff and favoring other similarly situated employees by closely scrutinizing Plaintiff's tardiness but not doing the same for other employees who were tardy.

129.   Defendant's conduct as described herein would dissuade a reasonable employee from exercising FMLA rights.

130.    Defendant's actions described above constitute retaliation and discrimination against Plaintiff for exercising rights and attempting to exercise her rights guaranteed by the FMLA, in violation of 29 U.S.C. § 2615(a)(2) and/or 29 U.S.C. § 2615(b).

131.    As a direct and proximate result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered and continues to suffer lost wages, benefits, bonuses and future earnings and earning capacity, and other monetary losses recoverable under 29 U.S.C. § 2617(a)(1)(A).

132.    Plaintiff is also entitled to an additional equal amount as liquidated damages because Defendant's violation of the FMLA was willful and/or not in good faith, together with interest, attorneys' fees, and costs as provided by 29 U.S.C. § 2617(a)(1)(A)–(3).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant on this Count, and award all remedies available under the FMLA, including: back pay, front pay, lost benefits, earned bonuses, liquidated damages, interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

### COUNT V

**Age Discrimination**
ADEA - 29 U.S.C. § 621 *et seq.*

133.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

134.    At all times relevant, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of the ADEA 29 U.S.C. §§ 630(b), (f), in that Defendant was engaged in an industry affecting commerce and employed twenty (20) or more employees for each

working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

135.    At all times relevant hereto, Plaintiff was at least forty (40) years of age and therefore a member of the class of individuals protected by the ADEA 29 U.S.C. § 631(a).

136.    At all relevant times, Plaintiff was qualified for Plaintiff's position as a Senior Service Representative with Defendant and satisfactorily performed the essential functions of that position.

137.    Leading up to and on or about March 6, 2025, Defendant subjected Plaintiff to adverse employment action, including disciplinary warnings, a performance improvement plan and ultimately termination in violation of the ADEA and 29 U.S.C. § 623(a)(1).

138.    At all times relevant hereto, Defendant, through its managers, supervisors, and/or agents, treated Plaintiff less favorably than similarly situated, employees outside Plaintiff's protected age group, including by:

a.    Hiring, retaining and promoting employees under the age of forty (40), despite being less qualified than older employees;

b.    assigning more favorable work to substantially younger employees;

c.    terminating Plaintiff when she began showing signs of age and experiencing medical complications;

d.    replacing Plaintiff with a younger individual without a disability or medical complications;

e.    enforcing policies more strictly against individuals over forty (40), including its Attendance and Punctuality Policy and its Vacation Policy;

    f.      requiring employees over (40) in the same job titles as younger employees to complete more tasks than younger employees;

    g.     making it more difficult for employees over the age of forty (40) to achieve awards, bonuses and other company accolades;

    h.     granting awards, bonuses and other company accolades more often to employees under the age of forty (40); and

    i.      openly celebrating achievements of employees under the age of forty (40) during daily huddles with little or no mention of achievements of employees over the age of forty (40), including Plaintiff.

139.   Plaintiff's age was a motivating and determinative factor in Defendant's decision to take the adverse employment action described above.

140.   Defendant's conduct as described herein constitutes unlawful age discrimination in violation of 29 U.S.C. § 623(a).

141.   As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of future earnings and earning capacity, and other monetary losses.

142.   As a direct and proximate result of Defendant's unlawful age discrimination, Plaintiff has suffered and will continue to suffer loss of wages, benefits, bonuses, earning capacity, and anxiety, emotional distress, humiliation, inconvenience, and other nonpecuniary losses.

143.   Defendant's discriminatory conduct was willful within the meaning of 29 U.S.C. § 626(b), entitling Plaintiff to liquidated damages in addition to back pay and other relief.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant on this Count, and award all remedies available under the ADEA, including but not limited to: back pay, front pay, lost benefits, liquidated damages, pre and post judgment interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**COUNT VI**

**Age Discrimination**
**PHRA 43 P.S. § 951 *et seq*.**

144.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

145.    At all times relevant, Plaintiff was a "person" and "employee" and Defendant was an "employer" within the meaning of the PHRA 43 P.S. § 954(a)(b)(c).

146.    At all times relevant hereto, Plaintiff was at least forty (40) years of age and therefore a member of the class of individuals protected under PHRA 43 P.S. § 954(h).

147.    At all relevant times, Plaintiff was qualified for Plaintiff's position as a Senior Service Representative with Defendant and satisfactorily performed the essential functions of that position.

148.    Leading up to and on or about March 6, 2025, Defendant subjected Plaintiff to adverse employment action, including disciplinary warnings, a performance improvement plan and ultimately termination in violation of the PHRA 43 P.S. § 954 *et seq*.

149.    At all times relevant hereto, Defendant, through its managers, supervisors, and/or agents, had a pattern of treating its age protected employees, including Plaintiff, less favorably than similarly situated, substantially younger employees outside Plaintiff's protected age group, including by:

j.      hiring, retaining and promoting employees under the age of forty (40), despite being less qualified than older candidates;

k.     assigning more favorable work to substantially younger employees;

l.      terminating Plaintiff when she began showing signs of age and experiencing medical complications;

m.    replacing Plaintiff with a substantially younger individual without a disability or medical complications;

n.     enforcing policies more strictly against individuals over forty (40);

o.     requiring employees over (40) in the same job titles as younger employees to complete more tasks than younger employees;

p.     making it more difficult for employees over the age of forty (40) to achieve awards, bonuses and other company accolades;

q.     applying unfair hiring practices to job applicants over the age of forty (40);

r.      creating an atmosphere and culture that was unfriendly and hostile to employees over the age of forty (40);

s.     granting awards, bonuses and other company accolades more often to employees under the age of forty (40).

150.   Plaintiff's age was a motivating and determinative factor in Defendant's decision to take the adverse employment action described above.

151.   Defendant's conduct as described herein constitutes unlawful age discrimination in violation of 29 U.S.C. § 623(a).

152.    As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of future earnings and earning capacity, and other monetary losses.

153.    As a direct and proximate result of Defendant's unlawful age discrimination, Plaintiff has suffered and will continue to suffer loss of wages, benefits, bonuses, earning capacity, and anxiety, emotional distress, humiliation, inconvenience, and other nonpecuniary losses.

154.    Defendant's discriminatory conduct was willful within the meaning of 29 U.S.C. § 626(b), entitling Plaintiff to liquidated damages in addition to back pay and other relief.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant on this Count, and award all remedies available under the ADEA, including but not limited to: back pay, front pay, lost benefits, liquidated damages, pre and post judgment interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

BIGHAM LAW, PLLC

By: *Edward Bigham*
Edward Bigham, Esq.
Attorney for Plaintiff
206 North Main Street
Souderton, PA  18964
610-804-2501 cell
267-373-0019 office